Wright, J., (dissenting.)
The check of Plumb on the Bank of the Interior, for $4,000, dated on the 6th of March, 1858, if duly certified, imposed an obligation on the bank, substantially the same as that assumed by the acceptor of an ordinary bill of exchange. That obligation was to retain the amount for which the check was drawn, and which, by the certificate, it admitted it had in hand to the credit of the drawer, to meet the check when presented, and to pay the same to the holder, on demand. (Farmers' and Mechanics' Bank v. Butchers' and Drovers' Bank, 16 N. Y., 125.) When the check was certified, Plumb’s account with the bank was good for the amount, and hence the bank was not, in any sense, or as to any person, an accommodation acceptor but the .principal debtor; and would have been liable even to a party who had not parted with value for the check. Certifying a check, when the drawer’s account is good, is substantially accepting a bill of exchange, with funds of the drawer in the acceptor’s hands. Hor is delay in the presentation any objection to a recovery against the bank. The certificate is to be ■ regarded as an acceptance, payable on demand, and was obligatory until paid, or the statute of limitations should attach as a bar. The Bank of the Interior, by certifying the check, became the principal debtor, and not the surety; the acceptor, not the drawer; and it had the money and ought to have it still. So far as relates to the check, therefore, the single question is, was it duly certified ? The certificate was made by the teller of the bank, ■ *151 and as the referee finds, in the usual manner of certifying checks. No point was made by the. plaintiff before the referee as to the form of the certificate. It was found, as a matter of fact, that the teller had been in the practice of certifying checks in the ordinary course of business, and with the knowledge of the officers of the bank, and without objection. This, I think, was enough to sustain the legal conclusion of the referee, that the teller had authority to certify.
Different questions arise in respect to the note. The-defendant had discounted a note made by Plumb, and indorsed by one Street, for $5,000, payable at the Bank of the Interior. On the 25th February, 1860, the day of its maturity, the same was presented at the Bank of the Interior for payment. The account of Plumb at the bank was not good for an amount sufficient to pay the note; but, on the contrary, such account was largely overdrawn. Instead of protesting the note, and notifying the indorser of its non-payment, the teller of the bank at which it was payable wrote over its face the words, “ Good. Kirtland, Teller,” and returned it to the person presenting it, on behalf of the defendant. The note was not sent into the Bank of the Interior, among the exchanges of the succeeding day; but the same was retained by the defendant, at the request of Plumb, to enable the latter to get a note in renewal, indorsed by Street. It was not afterwards renewed, nor was it presented to the Bank of the Interior for payment, nor sent in among the exchanges of that bank, by the defendant, until after its failure; nor was it ever entered on the books of either bank.
If the Bank of the Interior is to be held for the payment of this note, it is because the certifying, by its teller, thaf it was “ good,” legally imposes on it such obligation. I cannot adopt this view. The bank had no interest in, nor was it in any way a party to, the note; and the transaction was entirely out of the usual course of banking business. Implying, from the words, “ Good. Kirtland, Teller,” a promise to pay the note, it would be a promise to pay the note of. a third person, and for his accommodation. A banking corporation has no power to b°e- *152 come the mere surety for another, upon a contract in which it has no interest, or lend its credit in any way for the exclusive benefit of other parties. The Bank of the Intérior had no power to bind itself, either by guaranteeing or promising to pay Plumb’s note; and such contract cannot be enforced. No question can here arise, whether the defendants were innocent holders of the note, for a valuable consideration; as it was not paper which the bank had made, indorsed or put in circulation, and which had been subsequently purchased by the defendants for value, without notice that it was unauthorized. The defendants were parties to the original transaction, and are presumed to know the extent of the corporate powers of the bank with which they were directly dealing.
Again, there was, in fact, no consideration for any obligation, on the part of the Bank of the Interior, to pay the note. Plumb had no money in its hands that it could appropriate to its payment. Had the agent of the defendants taken the note, on the day it fell due, to the principal financial officer of the Bank of the Interior, and inquired of him, “ Will you pay this note of Mr. Plumb, if we send it in, to-morrow morning, in our exchanges ? ” and the cashier had answered that he would, the promise would have been void, as without consideration ; and it would have been equally void, if both question and answer had been in writing.
No legal obligation of the Bank of the Interior to pay the note to the defendants can be raised, from any custom or mode of transacting business, among the Albany banks, in respect to the collection of mercantile paper. A custom like that found by the referee cannot bind the bank, or impose any obligation, in law, on it, to pay the note. Though certifying that the note was “ good,” it might, the next day, refuse to pay; and payment could not be enforced. But it is shown, in this case, that when notes are so certified, it is-for the purpose of having them put into the exchanges of the next day. They are never so certified for the purpose of being held as a continuing obligation of the bank- Custom only authorizes such a certifying for the purpose of immediate adjustment. Assum *153 ing, therefore, that, by custom, the words, “Good. Kirtlánd, Teller," mean that the bank will make the note good, if brought in the next daily exchanges between the banks (and this is the most that can be claimed), the defendants failed to comply with the condition, and retained it several months, until the maker had probably become insolvent, and the bank' had failed. Besides, the transaction was entirely out of the usual course of business between banks. The note was never entered upon the books of either bank. It was held by the defendants, at the maker’s request, after being certified, for the purpose of getting another indorsed by Street, for renewal. This was by agreement with the defendants; and under that agreement it was held until the bank failed. To sustain a claim on such a transaction would be little short of a fraud upon the bank.
I think the referee erred in the conclusion that the note became in law an obligation of the Bank of the Interior to the defendants. The judgment of the Supreme Court affirming that of the referee should be reversed, and a new trial granted, with costs to abide event.
Gould, J., concurred in this opinion.
Judgment affirmed,